1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

UNITED STATES OF AMERICA,                    )
                                             )
                    Plaintiff,               )        Case No.  2:17-cr-00114-APG-CWH
                                             )
vs.                                          )        **REPORT & RECOMMENDATION**
                                             )        (ECF Nos. 50, 55, 69)
DAVID ALAN COHEN,                            )
                                             )
                    Defendant.               )
_____ )

      Presently before the court is pro se Defendant David Alan Cohen's Motion To Quash Search Warrant (ECF No. 50), filed on May 3, 2017, and Motion for a Franks Hearing (ECF No. 55), filed on May 5, 2017.   The government filed a response (ECF No. 65) to both motions on May 16, 2017.  Cohen replied (ECF No. 79) on May 25, 2017.  Because Cohen's Motion for a Franks Hearing (ECF No. 55) also included a request to suppress oral statements, the court entered an order (ECF No. 74) requesting supplemental briefing, and the government filed a supplemental brief (ECF No. 83) on May 26, 2017.  Cohen filed a supplemental response (ECF No. 101) on June 9, 2017.

      Cohen filed another Motion to Suppress (ECF No. 69), on May 16, 2017, which duplicates arguments contained in his prior motions, and is also addressed in this report and recommendation. The government responded (ECF No. 85) on May 30, 2017.  An evidentiary hearing on these motions was conducted on June 12, 2017.  (Mins. of Proceedings (ECF No. 104).)

**I.  BACKGROUND**

      On August 23, 2016, Las Vegas Metropolitan Police Department (LVMPD) Detective Sean Taylor received a cyber tipline report sent by the National Center for Missing and Exploited Children (NCMEC).[1]   The report referenced that a child pornography file was uploaded on or about

---

    [1] NCMEC is a Congressionally-funded non-profit corporation that is statutorily obligated to operate a cyber tipline as a means of combating internet child sexual exploitation.  42 U.S.C. § 5773(b).

June 2, 2016.  Upon review, Detective Taylor determined that the image depicted a nude young girl bound to a bench with moving straps.  This image was uploaded to a chat room giving access to an unknown number of individuals.  The upload came from IP address of 184.1.13.105.[2]  LVMPD investigated the cyber tip.  Century Link, the internet service provider, advised that the IP address belonged to a female living at 510 N. Fogg Street, Las Vegas, Nevada 89110.  Nevada Energy advised that the utilities at the property were in Cohen's name.  Detectives learned that Cohen had committed sex offenses dating back to June 1976.  On September 20, 2016, Detective Taylor drafted an affidavit and obtained a search warrant of the defendant's home from Las Vegas Justice Court Judge Cynthia Cruz.  The search warrant was executed on September 21, 2016, and after discovering electronic files of child sexual exploitation on a laptop which Cohen admitted belongs to him, Cohen was arrested, and taken to the Clark County Detention Center (CCDC).  (*See* Compl. (ECF No. 1) at ¶¶ 16-17.)

On September 22, 2016, after consultation with the office of the United States Attorney, Detective Taylor transported Cohen from state custody at the CCDC to federal custody in Henderson, Nevada.  A federal criminal complaint and arrest warrant were prepared and presented to United States Magistrate Judge Nancy Koppe.  On September 23, 2016, the federal criminal complaint was sworn and signed before Judge Koppe, although the accompanying arrest warrant was not signed and Cohen appeared for his initial appearance on the complaint the same day.  Cohen was detained pending trial.  (Mins. of Proceedings (ECF No. 3).)

Cohen argues that the affidavit for the search warrant of his home, where alleged pornographic material was discovered, is not supported by probable cause, and that it contains false statements which mislead the judge who issued the search warrant, and therefore the evidence seized at the home should be suppressed.  Cohen also argues that the search warrant does not contain a valid signature authorizing the search, and that he was illegally arrested on September 22,

---

[2] "Every computer or server connected to the Internet has a unique IP address."  *United States v. Forrester*, 512 F.3d 500, 510 n.5 (9th Cir. 2008).

2016 without a signed federal warrant.[3]   Finally, in his Motion for a Franks Hearing (ECF No. 55), Cohen moves to suppress statements made after the search was conducted.  The government responds that there are no falsehoods in the warrant, that there is sufficient evidence to establish probable cause for the search, and that Cohen's statements were lawfully obtained.

## II.  ANALYSIS

### A.  Sufficiency of the Search Warrant

The Fourth Amendment addresses "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures."  U.S. Const. Amend. IV. The Fourth Amendment protects reasonable and legitimate expectations of privacy.  *Katz v. United States*, 389 U.S. 347 (1967).  It protects "people not places."  *Id*.  Evidence obtained in violation of the Fourth Amendment and evidence derived from it may be suppressed as the "fruit of the poisonous tree."  *Wong Sun v. United States*, 371 U.S. 471 (1963).

In *Franks v. Delaware*, the Supreme Court established a two-prong test for challenging the sufficiency of a search warrant affidavit.  438 U.S 154 (1978).  The Court noted that there is a "presumption of validity with respect to the affidavit supporting the search warrant."  *Id.* at 171.  A defendant is entitled to an evidentiary hearing on the validity of the affidavit underlying a search warrant if he can make a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions and (2) the affidavit cannot support a finding of probable cause without the allegedly false information.  *Id*. at 155-56.  "To justify a hearing, a defendant must make specific allegations, allege a deliberate falsehood or reckless disregard for the truth, and accompany such a claim with a detailed offer of proof." *United States v. Craighead*, 539 F.3d 1073, 1080 (9th Cir. 2008) (citation omitted).  "A hearing will not be held on a defendant's pre-trial motion to suppress merely because a defendant wants one.  Rather, the defendant must demonstrate that a 'significant, disputed factual issue' exists such that a hearing is required."  *United States v. Martin*, 2010 WL 5575323 *7 (D. Nev.) (*citing United*

---

[3]  The absence of an arrest warrant is the basis for several motions by Cohen (ECF Nos. 35, 51). The court will separately address those motions.

1    *States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990)).

2         "When challenging a warrant affidavit pursuant to *Franks*, the defendant must not only

3    specify which portions are false, but must also furnish affidavits or other reliable documentation in

4    support of his challenge or satisfactorily explain the absence of such supporting documentation."

5    *See United States v. Fowlie*, 24 F.3d 1059, 1066 (9th Cir. 1994) (citation omitted).  The failure to

6    do so may result in the motion being denied.  *See e.g.*, *United States v. Ruddell*, 71 F.3d 331, 334

7    (9th Cir. 1995).

8         Even if a defendant makes a preliminary showing, that is not enough, standing alone, to

9    entitle a defendant to a *Franks* hearing.  A defendant must also show that the affidavit would not be

10   sufficient to support a finding of probable cause even if it was purged of its falsities and

11   supplemented by the omissions.  *See United States v. Stanert*, 762 F.2d 775, 782 (9th Cir. 1985)

12   (citing *Franks*, 438 U.S. at 171-72).  "The effect of misrepresentations and omissions on the

13   existence of probable cause is considered cumulatively."  *Stanert*, 762 F.2d at 782 (citation

14   omitted).  Thus, the judge reviewing a request for a *Franks* hearing must determine whether the

15   affidavit, once corrected, would provide a magistrate judge with the basis necessary to conclude

16   that probable cause exists.  *Id*.

17        Probable cause determinations are made by viewing the "totality of the circumstances" set

18   forth in the affidavit.  *See Illinois v. Gates*, 426 U.S. 213 (1983).  Probable cause is a fluid concept

19   not easily reduced to a set of legal rules.  *Id*.  Consequently, the task of a magistrate judge is

20   "simply to make a practical, common-sense decision whether, given all the circumstances set forth

21   in the affidavit . . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay

22   information, there is a fair probability that contraband or evidence of a crime will be found in a

23   particular place."  *Id*. at 238.  A magistrate judge's determination of probable cause is accorded

24   significant deference, *United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995), and there is a

25   "presumption of validity with respect to the affidavit supporting the search warrant."  *Franks*, 438

26   U.S. at 171.

27        Here, Cohen challenges the sufficiency of the affidavit and the probable cause

28   determination.  Specifically, he discusses the ambiguity of several statements in the affidavit: that

4

the cyber tip which was received by Detective Taylor was not validated by the Cyber Tipline as pornographic, that the IP address to be searched was not listed in his name, that there are possibly three children living at the searched address and that he is their grandfather, that the power bill subscriber information is not dispositive, and that anyone could have been using the router and IP address at the house. The government argues that none of these various statements is false, and Cohen does not argue that they are false.

At the evidentiary hearing, Detective Taylor testified that the Cyber Tipline does not make decisions about whether material is pornographic—that is the responsibility of law enforcement. The other claimed ambiguities are not sufficient to justify a *Franks* hearing. It is for the judge to decide whether there is a "fair probability" that the evidence will be located in a particular place, including reasonable inferences, and is a commonsense practical question. Neither certainty nor a preponderance of the evidence is required. *United States v. Kelley,* 482 F.3d 1047, 150-51 (9th Cir. 2007). The affiant need not provide all interpretations of the evidence, or those which would controvert his good faith assertion of probable cause.

Cohen does argue, however, that two statements in the affidavit are false: that Detective Taylor lied when he indicated that Cohen has an extensive criminal record of sex crimes against children since 1976, and that Detective Taylor lied when he said that Cohen's criminal history shows an evolution in obsessive criminal sexual behavior. As to Cohen's criminal record, the affidavit sets forth several pages of detailed discussion regarding incidents and arrests involving Cohen in New York from 1976 to 1989, including several arrests for sex-related crimes. Cohen provides his entire criminal history as an attachment to one of his motions. (Mot. to Suppress (ECF No. 69) at 33 of 82.) Cohen's criminal history of sex crimes against children is in fact extensive and is not misrepresented in the affidavit. Cohen does not identify any fact, incident, or arrest within Detective Taylor's discussion of his criminal history which is false. Nor does he provide an affidavit or other reliable information to support his opinion that his criminal history is simply "childish pranks." *See United States v. Fowlie*, 24 F.3d 1059, 1066 (9th Cir. 1994)(a false statement must be material to the probable cause decision).

/ / /

5

1      As to Detective Taylor's statement that Cohen's criminal history is evolving, even if this

2  statement is false, the affidavit is still sufficient. Assuming, as Cohen argues, that his criminal

3  history is not "evolving" because he has no reported criminal history after 1989, the affidavit

4  would still be sufficient to support probable cause because even by deleting those words, or the

5  notion that his criminal history is evolving, there is still sufficient basis to conclude that probable

6  cause exists based on the other statements in the affidavit. *Stanert*, 762 F.2d at 782. Because

7  Cohen has failed to identify any facts in the affidavit which are false, his motion for a *Franks*

8  hearing is denied. *See*, *Ruddell*, 71 F.3d at 334.

9      Finally, Cohen notes a discrepancy between the affidavits in support of the search warrant

10  with the subsequent affidavit supporting the federal criminal complaint issued by Magistrate Judge

11  Koppe on September 23, 2017. Specifically, in the federal criminal complaint affidavit, the

12  description of the pornography file that was reported in the Cyber Tipline includes the words,

13  "[t]he child is completely nude," but in the affidavit for search warrant, the words do not appear.

14  (*Compare* Motion (ECF No. 69), Ex. 6 at 73 *with* Mot. (ECF No. 69), Ex. 4 at 49.) At the

15  evidentiary hearing, Detective Taylor explained that this was simply an oversight when he typed

16  his description of the image into the search warrant affidavit. But Cohen does not connect this

17  omission to any particular argument. The search warrant affidavit did not include the statement

18  that the child is completely nude, but its omission does not serve Cohen. Adding that statement, as

19  would be required by *Stanert*, 762 F.2d at 782, does not diminish the sufficiency of the warrant

20  which was issued.

21      In sum, Cohen has not provided adequate information to challenge the sufficiency of the

22  search warrant affidavit. Given all the circumstances set forth in the affidavit, including the cyber

23  tip which contained an image displaying coercion by force and possible violence against a child,

24  the follow-up investigation that connected the downloaded image to a particular computer located

25  at Cohen's address, and Cohen's criminal history, this Court has no difficulty finding that there was

26  a fair probability that evidence of the crime would be found at Cohen's address.

27  / / /

28  / / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B. "General" Search Warrant

Cohen alleges that the search warrant was defective because it amounted to a "general" search warrant. He argues that the scope of the warrant was excessive, although he does not identify any seized evidence which exceeded the scope of the warrant.

Generally, the Fourth Amendment is violated by a governmental seizure of items beyond the terms of the warrant. *See United States v. Tamura*, 694 F.2d 591, 595 (9th Cir. 1982) ("As a general rule, in searches made pursuant to warrants only the specifically enumerated items may be seized."). Ordinarily, when officers seize items beyond the scope of a search warrant, only the evidence obtained in violation of the warrant is suppressed. *Id.* at 597. In cases where there is a "flagrant disregard" for the terms of the warrant, the court may suppress all of the evidence, including untainted evidence. *United States v. Juichang Chen*, 979 F.2d 714, 717 (9th Cir. 1992). Here, because Cohen has not identified any particular item that was seized which was not authorized by the search warrant, the court finds no basis to suppress any specific evidence on the theory that it was outside the scope of the search warrant.

### C. Warrant for Contents of Seized Computers

Cohen argues that law enforcement officers had no authority to search the computers which were seized at the residence without a subsequent search warrant. The warrant authorizes the removal of all items of digital related evidence from the location, and for a digital forensic analysis to be conducted. (Search Warrant (ECF No. 65-2) at 14-15 of 17.) Thus, to the extent Cohen moves to suppress evidence found on the seized computers, the court finds there is no basis to do so.

### D. Motion to Suppress Statements

Cohen moves to suppress the statements he made to law enforcement officers on September 21, 2016. Detective Taylor testified that the search warrant approved by Judge Cruz was executed on September 21, 2016. Before the search team entered Cohen's residence, an FBI SWAT team, composed of about 10 officers, entered and ensured the house was safe for the search. Once declared safe, SWAT departed and the search team began its search. Cohen was handcuffed and separated from his family members who were at the house – his wife, mother, and six year old

7

grand daughter.  Stephanie Sanchez and Sergio Sanchez, his daughter and son in law, arrived at the house during the search.

During the search, Cohen was interviewed by Detective Taylor.  Cohen was moved from the house to Detective Taylor's unmarked patrol car located a short distance from the residence, and handcuffs were removed.   At about 0811 hours, Cohen received his *Miranda* warnings. (Evidentiary Hearing, Defense Exhibit A.)  Cohen's demeanor was cooperative but he was concerned about the on-going search of his residence.   After some discussion, Cohen indicated that he wanted an attorney, and the questioning was stopped.  Cohen was moved to the front porch of the residence and placed under the supervision of Sergeant Hooten while the search continued.

Sergeant Hooten testified that later, Cohen approached her and told her that he wanted to continue to discuss the case, and so she informed Detective Taylor.  Because Cohen had already invoked his right to counsel, Detective Taylor contacted the Clark County District Attorney's office to obtain advice on whether he could continue the conversation.  Detective Taylor then again met with Cohen, and again advised Cohen of his *Miranda* rights.  Cohen provided a recorded narrative, beginning at 0950 hours, and then Cohen asked Detective Taylor whether he had any questions, and more questioning then occurred.  *Id*.

### 1.  Miranda Rights

Cohen argues that after he was given his *Miranda* warning, he acknowledged that he understood the rights, but did not explicitly agree to be questioned.  To establish a valid waiver, the government must show that the defendant knowingly and voluntarily waived his *Miranda* rights. *North Carolina v. Butler*, 441 U.S. 369, 372-73 (1979).   Where the waiver of a fundamental constitutional right is at issue, the burden is a heavy one because this court must afford the defendant "every reasonable presumption against waiver." *United States v. Heldt*, 745 F.2d 1277 (9th Cir. 1984).  The government must prove a waiver of *Miranda* rights by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).  An explicit statement of waiver is not invariably necessary to support a finding that the defendant waived the right to remain silent. *Butler,* 441 U.S. 369, 373 (1979).   In determining whether a valid waiver occurred, the court must consider the "background, experience, and conduct of the accused."  *Butler,* 441 U.S. at 374-75.

Here, Cohen is 57 years old and runs his investment commodities mentoring business from within his home. (Mot. to Dismiss (ECF No. 58) at 7 ("I made over 1 million in gross earnings in 15 years.").) In both interrogations where Cohen received his *Miranda* warnings, he indicated he understood his rights, and demonstrated his ability to assert his rights during the first interrogation when he invoked his right to counsel. Up until that time, he gave no indication that he wanted to remain silent. During the interrogations, he was calm and articulated and advocated his position clearly, speaking at length both times. Because Cohen understood his rights, and voluntarily chose to answer questions, the court finds that he implicitly waived his *Miranda* rights. The court therefore finds no basis to suppress statements made based on Cohen's *Miranda* rights.

*2. Second Interrogation*

Cohen argues that during the first interrogation, he invoked his right to counsel, and that no further questioning should have been allowed. According to the audio recording, Detective Taylor stopped his interrogation when Cohen invoked his right to counsel. Cohen was removed from the squad car, and Sergeant Hooten testified that she assumed custody of Cohen. She testified that she and Cohen waited at the porch of the house for the search to be completed. The porch was shaded, Cohen was not handcuffed, and from time to time, Cohen sat on the steps of the porch while waiting. Sergeant Hooten testified that Cohen did not complain about any physical or mental problems or discomfort while they waited, but that he volunteered several comments, for example, that he and his wife were having issues, and that looking at pornographic images was not bad. He also wondered aloud how much imprisonment he was facing. Sergeant Hooten testified that Cohen told her that he wanted to speak again about the investigation, and she relayed the request to Detective Taylor. Detective Taylor called the District Attorney's office, and then Cohen was moved back to Detective Taylor's squad car to allow Cohen to continue to speak with Detective Taylor. The recording of the second interview began with a second Miranda warning to Cohen, and Cohen was asked if he is sure that he wanted to talk to the officers, and whether he was doing so voluntarily. After affirming his desire to speak to the officers, Cohen provided another statement which he now desires to suppress.

///

While in custody, if an individual states that he wants an attorney, the interrogation must cease until an attorney is present. *Miranda*, 384 U.S. at 473-74. *See also Edwards v. Arizona*, 451 US 477, 484 (1981) (holding that when an accused expresses his desire to deal with the police only through counsel, he is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.) *Edwards* does not bar law enforcement officials from questioning a suspect when the "suspect himself initiates dialogue with the authorities." *Oregon v. Bradshaw*, 462 U.S. 1039, 1044 (1983). *See also, United States v. Moreno-Flores*, 33  F3d 1164, 1170 (9th Cir. 1994)(voluntary post-*Miranda* statements made during discussion of the offense initiated by the accused are admissible). The subsequent waiver of *Miranda* rights must be knowing and intelligent in light of the totality of the circumstances. *See Bradshaw*, 462 at 1044-45 (quoting *Edwards,* 451 U.S. at 486 n.9).

Here, Cohen initiated further discussions with Detective Taylor by notifying Sergeant Hooten of his desire to do so. Detective Taylor once again advised Cohen of his *Miranda* rights, and Cohen agreed that it was his desire to speak to them, that it was his idea and nobody tried to force him to speak them, and that he had not been coerced in any way to speak to them. He proceeded to make a 10-15 minute narrative statement, and then asked the officers if they had any questions for him, and the discussion continued.  Under the totality of the circumstances, the court finds that Cohen knowingly and intelligently initiated the subsequent dialogue with Detective Taylor, and so suppression is not appropriate.

### 3. Voluntariness of Statements

Cohen argues that his statements were coerced, and not voluntarily made. For instance, he argues he is diabetic and that he was not allowed to eat after informing the detective of his condition, and that he was forced to stand because ants on the ground were biting him. The government must prove by a preponderance of the evidence that the statement was voluntary. *Lego v. Twomey*, 404 U.S. 477, 488-89 (1972); *United States v. Leon Guerrero*, 847 F.2d 1363, 1365 (9th Cir. 1988). The court considers the totality of the circumstances to determine whether "the government obtained the statement by physical or psychological coercion or by improper

inducement so that the suspect's will was overborne." *Guerrero*, 847 F.2d at 1366. Refusal to cooperate is every defendant's right under the fifth amendment. *United States v. Harrison*, 34 F.3d 886, 891 (9th Cir. Cal. 1994).

Here, at the conclusion of the first interview, after he had invoked his right to counsel, Cohen was asked whether he had been treated well, and indicated that he had been treated "great," although he did not like the way the house was searched. At the beginning of his second statement, Cohen was asked whether he was making the statement voluntarily, and if anyone was forcing him to make a statement, and Cohen indicated that the statement was voluntary without coercion. Detective Taylor and Sergeant Hooten both testified that Cohen did not complain about the conditions of his custody or interrogation. And Cohen received and indicated that he understood his *Miranda* rights on two occasions. The only evidence provided by Cohen on the question of coercion was contained in the statement of Sergio Sanchez, who indicated that the officers had their fingers on the triggers of their guns while they were at the house. Cohen provided no information that he was aware of this at the time he made his statement, and did not testify that he was coerced in any way, or that his statement was involuntary. Nor did Cohen testify or provide any evidence indicating that his medical condition impacted the voluntariness of his statements. Accordingly, the court finds that, under the totality of the circumstances, the government has met its burden to establish that Cohen's statements were voluntary and not coerced.

Cohen also argued at the hearing that before he was given his *Miranda* rights, he was told that "it didn't mean anything." The obligation to administer *Miranda* warnings attaches once a person is subject to "custodial interrogation." *Miranda v. Arizona*, 384 U.S. 436, 445 (1966). Cohen was in custody when he was placed in the squad car, and he makes no argument that the *Miranda* warnings he received were defective. At the beginning of his interrogation of Cohen, Detective Taylor indicated, "I'm going to tell you what your rights are, it doesn't mean anything, its just that we brought you out of the house and you are sitting in the squad car, and I want you to know your rights." Cohen did not testify at the hearing, and provided no evidence that he did not understand his rights, or that he believed that the *Miranda* rights he received were not relevant to his discussions with Detective Taylor. Nor did Cohen provide points and authorities to support

11

suppression based upon those facts.  Accordingly, the Court finds no basis in Cohen's argument that his statement was coerced and not voluntary.

### III.  CONCLUSION AND RECOMMENDATION

Accordingly, **IT IS HEREBY RECOMMENDED** that Cohen's Motion to Quash Search Warrant and for a Franks Hearing, and to suppress statements (ECF Nos. 50, 55, 69) be **denied**.

### IV.  NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1).  A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation.  Local Rule IB 3-2(a).  Failure to file a timely objection may waive the right to appeal the District Court's Order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: July 3, 2017

_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**